## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-011** |
| **TIM HOOPER, WARDEN LOUISIANA STATE PENITENTIARY** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2)**.[1]

### I.    Factual and Procedural Background

Petitioner Charles Williams ("Williams"), represented here by counsel, is an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]    On June 24, 2015, Williams was indicted by a St. Bernard Parish Grand Jury for the aggravated rape of his stepdaughter, K.P.,[3] a child under the age of 13.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] ECF No. 1, Petition.  The State Court Record was electronically filed by the State at ECF Nos. 10-13 in multiple parts.

[3] Pursuant to La. Stat. Ann. § 46:1844(W)(1)(a), the state courts refer to the minor victim and some family members by their initials because of the minor victim and sex crime charged in the indictment.  This Court will do the same.

[4] ECF No. 13, at 38, Indictment, 6/24/15.

The record reflects that,[5] on June 17, 2014, Deputy Jay Bertheaud of the St. Bernard Sheriff's Office responded to a complaint of sexual assault of a juvenile. He spoke with K.P., the victim, who told him that Williams, her stepfather, had sexually assaulted her, including vaginal penetration, numerous times over the course of four years. Per protocol, the Deputy called in Lt. Michelle Canepa with the Juvenile Investigations Bureau to take over the investigation. Lt. Canepa conducted a brief interview with K.P. at her office away from the residence that K.P. shared with Williams and her mother, K.W. During this interview, K.P. disclosed that Williams had placed his penis inside of her vagina on several occasions. K.P. was referred for a forensic interview at the Audrey Hepburn Care Center (a/k/a New Orleans Children's Advocacy Center or "CAC") at Children's Hospital in New Orleans.

Kate Holeman, a forensic interviewer at CAC, conducted the first forensic interview with K.P. on June 18, 2014. At that time, K.P. explained that Williams had been molesting her since she was in the fourth grade when she was either ten or eleven years old. K.P. stated that Williams threatened that, if she told anyone about the sexual abuse, he would kill her and her mother. K.P. further stated she was scared to tell her mother about the sexual abuse because she did not think that her mother would do anything. According to K.P., her last sexual encounter with Williams was approximately three weeks before the interview, on a Monday evening. K.P. explained that she had not gone to school that day because she had been suspended, and her mother would not let her watch television. At some point that evening, Williams entered K.P.'s bedroom and told her that he had cleared it with her mother for her to watch television. Once K.P.'s mother went to take a shower, Williams pushed K.P. down on the bed, got on top of her, pulled down her clothes,

---

[5] The facts are taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Williams*, 240 So. 3d 355, 358-363 (La. App. 4th Cir. 2018); ECF No. 11 at 31-45, 4th Cir. Opinion, 2017-KA-0544, 3/14/18.

pulled down his clothes, put his hand over her mouth, and inserted his penis into her vagina.  K.P. stated he  pushed "harder and harder" and that she closed her eyes.  She said Williams "stayed on" her approximately five minutes and stopped when he heard her mother emerge from the shower. K.P. stated she did not know what do to, her stomach hurt, and she felt scared and violated.  K.P. stated that after the incident, she showered and put her clothes in the washing machine.

K.P. then explained that on other occasions, including the first incident of sexual abuse, Williams molested her while her mother was at work and did so in the bedroom he shared with her mother.  She told the interviewer that, during the first incident of sexual abuse, Williams told her not to "scream or talk."  He then pulled his pants half down, pulled her clothes to her knees, got on top of her, and placed his penis inside her vagina.  K.P. said it hurt and that she felt scared, but did not know whether to scream, cry, or tell her mother.  K.P. said that, afterward, there was "something white and gooey on the bed," and Williams wiped it off.  Defendant then told her to use the bathroom, but instructed her not to flush the toilet until he checked it.  K.P. locked herself in her room and did not emerge until a friend came over and asked if she wanted to play outside.

K.P. could not estimate for the interviewer how many times Williams had abused her, but stated that the sexual abuse usually occurred when her mother was at work.  She remembered seeing Williams's penis, which she described as "brownish-black" and said "it wasn't that long," but did not recall anything unusual about it.

CAC Interviewer Holeman questioned K.P. again on July 15, 2014, at the CAC.  During this interview, K.P. stated that she was concerned about talking to Holeman because people might treat her differently knowing what happened and her relationship with her mother would change. Holeman asked K.P. to discuss the first time Williams raped her.  K.P. recalled that it occurred after she had taken $20.00 from Williams, because she wanted go to the skating rink and her

mother was at work.  Williams entered K.P.'s bedroom, and yelled at her.  He told her that he would tell her mother about the money if K.P. did not have sex with him.  K.P. then described the same conduct and sexual acts that she provided in the first forensic interview.

On July 17, 2014, K.P. also underwent a physical examination at CAC with Dr. Jamie Jackson.  Dr. Jackson found no latent physical evidence of sexual abuse, such as scarring, and did not test for sperm or DNA because of the passage of time.  She diagnosed K.P. as a sexual abuse victim based on the history provided.

Lt. Canepa spoke with Williams by telephone after K.P.'s first forensic interview and advised him that he was under investigation.  Williams agreed to meet with Lt. Canepa, but he never showed up.  An arrest warrant was issued for Williams in August 2014, but he was not arrested until 2015.  At the time of trial in 2017, K.P. was 16 years old and living with her sister; she had not seen her mother in several years as a result of her allegations of abuse against Williams, to whom her mother remained married.

Williams was tried before a jury on April 4 through 7, 2017, and found guilty as charged of aggravated rape.[6]  On April 19, 2017, Williams's trial counsel filed a motion for new trial based on lack of physical evidence and arguing that the verdict was contrary to the law.[7]  At a hearing held April 25, 2017, the state trial court denied the motion as meritless.[8]  Williams waived legal delays, and the state trial court sentenced him to serve life in prison without benefit of parole, probation, or suspension of sentence.[9]

---

[6] ECF No. 13 at 31-32, Trial Mins., 4/4/17; *id*. at 33, Trial Mins., 4/5/17; *id*. at 34-35, Trial Mins., 4/6/17; *id*. at 36, Trial Mins., 4/7/17; *id*. at 123, Jury Verdict Form, 4/7/17; *id*. at 157- 83, Trial Tr., 4/5/17; *id*. at 184-260, Trial Tr., 4/6/17; ECF No. 13-1 at 1-74, Trial Tr. (continued), 4/6/17; *id*. at 75-189, Trial Tr., 4/7/17.

[7] ECF No. 13 at 140, Motion for New Trial, 4/19/17; *id*. at 142, Memorandum in Support, 4/19/17.

[8] *Id*. at 37, Sentencing Mins., 4/25/17; ECF No. 13-1 at 197, Sentencing Tr., 4/25/17.

[9] *Id*. at 197-98.

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Williams's appointed counsel asserted three errors:[10] (1) Williams's right to present a defense and to confront his accusers was violated when the state trial court did not allow him to admit a photograph of his penis to contradict K.P.'s verbal description; (2) Williams's right to present a defense and to confront his accusers was violated when the state trial court did not allow him to present evidence that K.P. lied to Office of Child Services for the purpose of being removed from her aunt's house; and (3) trial counsel was ineffective for allowing Dr. Jackson to give a diagnosis that actually was an opinion that K.P. was truthful, thereby commenting on Williams's guilt.  With Williams present counsel enrolled, three supplemental claims were asserted:[11] (1) the conviction violated due process when videos of K.P.'s two forensic interviews were played for the jury but the statements were not transcribed; (2) the conviction violated due process when it was based on perjured testimony regarding K.P.'s testimony as to how many times a week Williams's raped her; and (3) the state trial court erred when it denied Williams's motion for new trial.

On March 14, 2018, the Louisiana Fourth Circuit affirmed Williams's conviction and sentence finding no merit in five of the claims and deferring any ruling on the ineffective assistance of counsel claim to post-conviction review.[12]   The Louisiana Supreme Court also denied Williams's related writ application without stated reasons on March 18, 2019.[13]

---

[10] ECF No. 11 at 66, 67, Appeal Brief, 2017-KA-0544, efiled 8/30/17; *see also id*. at 123, Reply Brief on Appeal, 2017-KA-0544, 10/13/17; *id*. at 156, Response Brief on Appeal, 2017-KA-0544, undated.

[11] *Id*. at 131, 135, Suppl. Appeal Brief, 2017-KA-0544, undated.

[12] *Williams*, 240 So. 3d at 355; ECF No. 11 at 29-60, 4th Cir. Opinion, 2017-KA-0544, 3/14/18.

[13] *State v. Williams*, 267 So. 3d 83 (La. 2018); ECF No. 11 at 174, La. S. Ct. Order, 2018-K-0584, 3/18/19; *id*. at 1, La. S. Ct. Writ Application, 18-K-584, efiled 4/12/18.

Williams's conviction was final 90 days later, on Monday, June 17, 2019,[14] because he did not file for review with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On June 16, 2020, Williams through current retained counsel filed in the state trial court an application for post-conviction relief in which he asserted the following claims:[15] (1) He was denied due process because the conviction was by non-unanimous jury verdict in violation of *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020); and (2) ineffective assistance of counsel causing denial of his right to present a defense and confront his accusers when (a) counsel lacked timely preparation, by taking a low quality photograph and failing to litigate by pretrial *motion in limine* the admissibility of the poor quality photograph of Williams's penis, (b) counsel did not demand that the videos of K.P.'s two forensic interviews be transcribed thereby denying him of a complete record for review; (c) counsel failed to object to Dr. Jackson's opinion testimony on K.P.'s truthfulness.

After a lengthy stay of proceedings requested by Williams's counsel and after receiving the State's opposition response when the case reopened,[16] the state trial court held a hearing on April 12, 2023, at which all of Williams's claims were addressed and argued to the court.[17]  On May 16, 2023, the state trial court denied Williams's application.[18]  In its reasoned opinion, the state trial court acknowledged that Williams withdrew his *Ramos* claim at the hearing.  On further

---

[14] The parties both erred in representing June 16, 2019, as the date of finality for Williams's conviction.  The ninetieth day was *Sunday*, June 16, 2019, causing the final day of the period to fall to the next business day, Monday, June 17, 2019.  *See* La. Code Crim. Proc. art. 13; Fed. R. Civ. P. 6(a)(1)(C).

[15] ECF No. 10-1 at 55, Application for Post-Conviction Relief, pages 1-17, 6/16/20; *id*. at 44-45, pages 18 and 19 of Application.

[16] *Id*. at 99, State's Response, 4/6/23.

[17] ECF No. 12 at 6, Hearing Transcript, 4/12/23; *see also id*. at 1, Hearing Transcript, 4/11/23.

[18] ECF No. 10-2 at 47-48, Trial Court Order, 5/16/23.

review of the claims, the court determined that, on post-conviction review, Williams merely converted the same arguments already addressed and denied on direct appeal as claims of ineffective assistance of counsel. The court resolved that the claims were meritless because the substance of the photograph was presented to the jury through testimony, the videos were played for the jury and placed into evidence, and Dr. Jackson's testimony was not impermissible.[19]

Williams through current retained counsel sought review of that ruling in a writ application to the Louisiana Fourth Circuit in which he asserted two arguments:[20] (1) the state trial court erred when it denied Williams's request for an evidentiary hearing where trial counsel could be questioned; and (2) the state trial court erred when it denied the application without an evidentiary hearing or allowing the deposition of Williams's trial counsel and instead based its ruling on the conclusions reached by the Louisiana Fourth Circuit on direct appeal. Counsel did not present any substantive claims of ineffective assistance to the court.

On August 3, 2023, the Louisiana Fourth Circuit denied Williams's writ application without stated reasons.[21] The Louisiana Supreme Court also denied Williams's related writ application, in which counsel asserted the same two arguments, on February 6, 2024, finding that Williams failed to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and citing La. Code Crim. Proc. arts. 930.2 and 930.4.[22]

## II.    Federal Petition

On January 2, 2024, Williams through his same, current counsel filed this federal petition for habeas corpus relief in which he asserted the following grounds for relief:[23] (1) ineffective

---

[19] *Id*. at 132-33.
[20] ECF No. 12, at 210, 216, 2023 4th Cir. Writ Application, bearing incorrect writ number, efiled 7/24/23.
[21] ECF No. 10-2, at 83, 4th Cir. Order, 2023-K-0473, 8/3/23.
[22] *State v. Williams*, No. 2023-KP-1212, 2024 WL 445824, at *1 (La. Feb. 6, 2024); *see also Id*. at 88, Copy of La. S. Ct. Writ Application, bearing no writ number or file stamp from the proper court.
[23] ECF No. 1 at 6, 14-15.

assistance of counsel when trial counsel failed to properly prepare and present a defense by failing to admit a non-blurry, quality photograph of Williams's penis to contradict the victim's description of his penis; (2) ineffective assistance of counsel when trial counsel failed to request a transcription of the victim's forensic interview to be presented at trial to provide a full and accurate record; and (3) ineffective assistance of counsel when trial counsel failed to object to the expert's diagnosis of the victim as a "victim of sexual assault" as an opinion on petitioner's guilt.

The State filed a response in opposition to Williams's petition conceding timeliness and initially asserting Williams's failure to exhaust based on a now-resolved Louisiana Supreme Court writ application.[24]  In addition, the State argued that Williams's failed to meet his burden under *Strickland* and is not entitled to relief on his claims.  Williams did not file a reply to the State's opposition despite being provided an opportunity to do so.

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to Williams's petition filed by his counsel on January 2, 2024.  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Although timeliness is not an issue, Williams's efforts to exhaust state court review warrant comment.  To exhaust state court review, a petitioner must establish that the *substance* of the

---

[24] ECF No. 15, at 2; *see also*, ECF No. 16 (Order denying Williams's Motion for Stay).

[25] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

federal habeas claims has been "fairly presented to the highest state court" in a procedurally proper manner. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). The federal claim also must be "the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Id*. The Court questions whether Williams's counsel "fairly presented" any of the federal claims of ineffective assistance of counsel in his last Louisiana Fourth Circuit and Louisiana Supreme Court writ applications. As outlined previously, Williams ineffective assistance of counsel claims were asserted in his 2020 state post-conviction application. The claims were addressed and relief denied by the state trial court following oral argument at the hearing held April 12, 2023. The record demonstrates that Williams through counsel sought review of the denial of relief to the Louisiana Fourth Circuit and the Louisiana Supreme Court. However, Williams's counsel-filed writ applications to those courts did not assert any substantive claims of ineffective assistance of counsel. Instead, the writ applications challenged on procedural grounds the failure of the trial court to allow Williams's counsel the opportunity to develop the record with testimony from or a deposition of trial counsel.

The Court recognizes that the Louisiana Supreme Court ultimately held that Williams failed to show ineffective assistance under *Strickland*, thereby apparently generously considering the merits of Williams's underlying claims presented to the state trial court. But the fact of the matter is that the actual ineffective assistance of counsel claims were not asserted by counsel in either writ application filed after the state trial court ruled on the post-conviction application. Nevertheless, the Court has before it a reasoned Louisiana Supreme Court opinion denying relief

on the merits of Williams's ineffective assistance of counsel claims which will be addressed under the deferential AEDPA standards set forth below.[26]

IV.    **Standards of a Merits Review**

The standard of review under the AEDPA is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is

---

[26] Any failing in the propriety of the exhaustion path taken by Williams's counsel does not prevent the Court from addressing Williams's claims, which for the reasons to follow provide no basis for federal habeas relief. *See* 28 U.S.C. § 2254(b)(2). If a reviewing court finds that the claims were not properly exhausted, the deferential AEDPA standards of review would not apply. *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal habeas court's review falls under pre-AEDPA *de novo* standards. *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009). In this case, for the reasons provided herein, Williams's claims fail under either standard. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (a claim that fails under a *de novo* review would necessarily fail under AEDPA's deferential standard of review).

that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    <u>Effective Assistance of Counsel</u>

Williams alleges that he was denied effective assistance of counsel on three grounds: (1) trial counsel failed to properly prepare and present a defense by failing to admit a non-blurry, quality photograph of Williams's penis to contradict the victim's description of his penis; (2) trial counsel failed to request a transcription of the victim's forensic interview to be presented at trial to provide a full and accurate record; and (3) trial counsel failed to object to the expert's diagnosis of the victim as a "victim of sexual assault" as an opinion on petitioner's guilt. The State in opposition argues that Williams failed to establish that he was denied effective assistance under *Strickland* standards referencing the reasons provided by the state courts.

### A.    <u>*Strickland* Standard of Review</u>

In *Strickland*, relied on by the state courts, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296

12

(5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]he petitioner must 'affirmatively prove,' [and]

not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The Supreme Court has clarified, that when applying *Strickland* on habeas review, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* opinion went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard

through the "deferential lens of § 2254(d)." *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

B.    **Conclusory Federal Habeas Claims**

On the form petition, Williams's counsel provided brief statements of three ineffective assistance of counsel claims with little or only summary explanations and no memorandum of law and argument in support. As noted above, conclusory allegations of ineffective assistance of counsel are not sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282. The burden of proof under the AEDPA is on the habeas petitioner. *Price*, 538 U.S. at 641 ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"); *Harrington*, 526 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). The Court does not broadly construe pleadings filed by counsel to assist in stating a claim or meeting that burden. *See Nelson v. Cain*, No. 13-4998, 2014 WL 2859147, at *14 (E.D. La. Jun. 23, 2014).

For the following reasons, Williams has fallen woefully short of meeting his burden of proof under *Strickland* or the doubly deferential standards of the AEDPA. While this Court is not called upon to, and will not, review the propriety of the underlying state law based evidentiary rulings,[27] the Court has considered the pleadings, transcripts, and rulings on the underlying claims to provide background for evaluating trial counsel's performance under *Strickland*.

---

[27] Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

15

C.      **Photograph**

In one conclusory statement, Williams, through current counsel, alleges that trial counsel

failed to prepare a defense when trial counsel did not admit at trial a non-blurry and quality

photograph of Williams's penis to challenge the description given by K.P.  He references an

"[a]ttached memo" which provides absolutely no discussion, argument, or legal references.[28]

Instead, the document merely presents a list of proposed unanswered questions that Williams's

counsel included in the post-conviction writ applications to the Louisiana Fourth Circuit and

Louisiana Supreme Court.  In those state court pleadings, but nowhere in this federal petition,

Williams's counsel argued that he would have asked these questions to trial counsel in a post-

conviction hearing or deposition, which counsel never timely pursued or sought leave to take.[29]

The list of unanswered questions are neither fact nor argument relevant to this Court's deferential

*Strickland* analysis or doubly deferential AEDPA review of the state courts' decisions.

According to the record, the issue of somehow publishing Williams's scarred penis to the

jury was discussed by trial counsel with the prosecutor and the state trial court weeks prior to

trial.[30]  Also contrary to Williams's claims, the record demonstrates that the specific credibility

concerns with K.P.'s description of Williams's penis were raised a few weeks before trial because

that is when counsel was first made aware of the discrepancies.[31]  The picture itself was taken two

or three weeks prior to trial, but not shown to the prosecution or the state trial court until the

morning after jury selection.[32]  The prosecutor objected to the admissibility of the picture on

grounds of relevance and accuracy (distance from which it was taken and the lack of identifiers as

---

[28] ECF No. 1, ¶12, at 6 (Ground One); *id*. at 7 (list of questions).
[29] *Id*.; *see also*, ECF No. 12 at 23-25, Hearing Transcript, 4/12/23; *id*. at 224-25, 2023 4th Cir. Writ Application; ECF No. 10-2 at 104-05, La. S. Ct. Writ Application, 9/25/23.
[30] ECF No. 13 at 168, Trial Transcript, 4/5/17.
[31] *Id*. at 168-69.
[32] *Id*. at 174.

to who was in the picture).[33]  After reviewing the picture, the state trial court found nothing distinctive about the penis in the picture.[34]  The state trial court denied the motion to admit the picture with no further reasons given.[35]  Contrary to Williams's arguments, the state trial court did not mention blurriness or the inability to identity the person in the picture when denying the request to admit the picture.

On direct appeal, the Louisiana Fourth Circuit found no error in the state trial court's ruling, citing a myriad of Louisiana evidentiary rules, and disagreed with Williams's claim that the ruling impeded his ability to present a defense or challenge K.P.'s credibility.[36]  The Court further noted that even if there was error, it was harmless, because Williams's trial counsel was able to present favorable defense testimony and cross-examine K.P. about her description.[37]

On post-conviction, the state trial court denied relief on Williams's ineffective assistance of counsel claims citing these same findings.[38]  The Louisiana Supreme Court further found no basis for relief under *Strickland*.[39]

First and foremost, it is clear from the record that Williams's trial counsel made an effort before trial to somehow have the jury view Williams's penis[40] or a picture thereof, and lost that battle.  Counsel cannot be deemed ineffective simply because a motion or strategy was unsuccessful.  *Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  Moreover, "[a]

---

[33] *Id*. 170-71.

[34] *Id*. at 174.

[35] *Id*. at 175.

[36] *Williams*, 240 So. 3d 366; ECF No. 11 at 46-48, 49, 4th Cir. Opinion, 2017-KA-0544, 3/14/18.

[37] *Williams*, 240 So. 3d 366-67; ECF No. 11 at 49, 4th Cir. Opinion, 2017-KA-0544, 3/14/18.

[38] ECF No. 10-2 at 47-48, Trial Court Order, 5/16/23.

[39] *Williams*, 2024 WL 445824, at *1.

[40] Earlier in the pretrial hearing, the court did mention that it would not allow Williams's to show his penis to the jury.

decision whether and, if so, how to impeach a witness falls within the purview of counsel's trial strategy." *Bruce v. Cain*, No. 13-6435, 2014 WL 6713117, at *6 (E.D. La. Nov. 26, 2014). Having lost the battle to present the only available picture, Williams's trial counsel opted for another strategy to challenge K.P.'s credibility as to her description of her stepfather's penis, which she attested she did not see very well. Trial counsel was able to cross-examine K.P. about that description. Trial counsel also was able to present an abundance of testimony, including that of Williams and his wife, *i.e.* K.P.'s own mother, to provide a description of the purported oddities in the skin tones of Williams's penis; these descriptions differed from K.P.'s vague descriptors.

Though a picture is said to be worth a thousand words, the jury in Williams's case actually heard the words from him and his witnesses that contradicted K.P.'s testimony. Under the circumstances, his trial counsel's decision to pursue a different strategy of using testimony, rather than another picture, to provide a defense challenge to K.P.'s testimony and credibility, was well within the ambit of sound trial strategy. *See Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

It is also noteworthy that Williams has not established that the state trial court would have admitted another picture, and considering the analysis of the Louisiana Fourth Circuit on appeal, he likely could not do so under Louisiana evidentiary law. Trial counsel would not have been deficient for failing to attempt a futile effort to admit another picture. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). In addition, and contrary to Williams's arguments, the Louisiana

Fourth Circuit expressly found that the exclusion of the picture *did not* prevent Williams from presenting a defense because of trial counsel's ability to utilize other means to make that challenge and present a defense to that aspect of the case. For these reasons, Williams's can show no prejudice resulting from trial counsel's failed attempt to present a picture.

Furthermore, as noted above, counsel's strategy is presumed to be objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689. The fact that the jury did not believe the defense or discredit K.P. based on her inability to describe the skin tone of Williams's penis, does not render counsel's performance constitutionally deficient. *See Martinez*, 99 F. App'x at 543.

For these reasons, Williams's has failed to demonstrate deficient performance under either prong of the *Strickland* test or that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*. He is not entitled to federal habeas relief on this claim.

### D.    Transcription of Videoed Forensic Interviews

In another brief, conclusory statement, Williams through counsel alleges that his trial counsel was ineffective for failing to have the video recorded forensic interviews transcribed, thereby depriving Williams's of a full and accurate record. The issue of the transcription was initially raised by Williams's current counsel in a supplemental direct appeal brief.[41] The Louisiana Fourth Circuit found the claim meritless, noting that Williams's trial counsel agreed with the prosecution that the court reporter did not need to transcribe the interviews played for the jury.[42] The Court held that the videos introduced into the record were the best evidence of their content and were available for review on appeal.[43]

---

[41] ECF No. 11 at 131, Suppl. Appeal Brief, 2017-KA-0544 (undated).
[42] *Williams*, 240 So. 3d at 369 & n.16; ECF No. 11 at 55, 4th Cir. Opinion, 2017-KA-0544, 3/14/18.
[43] *Id*.

When Williams's current counsel revisited the same issue as an ineffective assistance claim on post-conviction review, the state trial court denied relief finding no support for the claim for the reasons given on direct appeal.[44]  The Louisiana Supreme Court also denied Williams's relief holding that Williams's failed to meet his burden of proof under *Strickland*.[45]

A criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete and accurate record.  *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971).  However, the Supreme Court has *not* held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief.  Instead, a habeas petitioner must still prove that the missing portion of the transcript actually prejudiced his appeal in some manner.  *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed to show the absence of voir dire transcript prejudiced his appeal).  Williams cannot meet this burden.

Williams does not and has never explained why transcripts of the admitted video recordings were necessary to complete the record for review.  According to the record and the state courts' findings, the actual videos were in fact admitted into the record and available for review on direct appeal.  With no showing that his appeal was jeopardized in some way, Williams has failed to establish that counsel's failure to have the videos transcribed was deficient or prejudicial.

---

[44] ECF No. 10-2 at 47-48, Trial Court Order, 5/16/23.
[45] *Williams*, 2024 WL 445824, at *1.

Williams, therefore, has not and cannot establish either prong of the *Strickland* test.  He also has not shown that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*.  He is not entitled to federal habeas relief on this claim.

### E.    Expert's Testimony

Williams alleges that his trial counsel was ineffective for failing to object to Dr. Jackson's diagnosis that K.P. was a victim of sexual assault, which was tantamount to an opinion on Williams's guilt.  The claim was first addressed by the state trial court on post-conviction review.  The Court found no merit in Williams's ineffective assistance claim on these findings: [46]

> Dr. Jamie Jackson only testified that she found the victim to be credible.  She did not testify at anytime [sic] as to the guilt or innocence of the Defendant.  This Court does not find anything impermissible about Dr. Jamie Jackson's testimony.

The Louisiana Supreme Court also ultimately found no basis for relief under *Strickland*.[47]

A reading of Dr. Jackson's trial testimony supports the reasons given by the state trial court.  After a lengthy discussion about her findings, Dr. Jackson was asked by the prosecutor if, based on the medical history and physical exam, she "can conclude that the medical evaluation you performed is consistent with a child who has been sexually abused?"[48]  Dr. Jackson responded, "Yes, my diagnosis is child sexual abuse."[49]   On cross-examination, which followed almost immediately after her response, Williams's trial counsel had the following exchange with Dr. Jackson:[50]

> Q.    Your finding that you said that you found this to be sexual abuse - - a child sexual abuse case - - it's strictly based - - there's no physical findings at all of sexual abuse.  It would be strictly on the child's statements, correct?

---

[46] ECF No. 10-2 at 48, Trial Court Order, 5/16/23.
[47] *Williams*, 2024 WL 445824, at *1.
[48] ECF No. 13-1 at 20-21, Trial Transcript (continued), 4/6/17.
[49] *Id*. at 21.
[50] *Id*. at 24.

A.      Yes.  A majority of the time, that is what happens with child sexual abuse cases. . . .

On further questioning, Williams's trial counsel confirmed with Dr. Jackson that her examination of K.P. resulted in finding "no tears, no bruising, no abrasions . . . didn't find any scarring . . .." internal or external to her vagina.[51]  In summarizing her testimony, counsel asked Dr. Jackson, ". . . you found no physical evidence of child abuse, but you determine it, in your opinion, that there was child abuse based on the history?"[52]  Dr. Jackson responded, "Yes.  My diagnosis is child sexual abuse.  She was very clear with her history."[53]

Dr. Jackson's comments and opinions also were very clear, there was no physical evidence typical of sexual abuse and DNA was not tested for six weeks after the last sexual encounter.  She based her diagnosis strictly on the history given by K.P.  Williams's trial counsel repeatedly assured by his questioning that the jury heard that the sole basis for her diagnosis was K.P. and nothing more.  As resolved by the state trial court, at no time did Dr. Jackson opine that Williams was the perpetrator or comment on Williams guilt.  As the examining medical expert, she was entitled to testify about the examination she conducted, her diagnosis, and the reasons therefor.

As determined by the state courts under state law, there was nothing in her testimony that warranted an objection from Williams's trial counsel, and Williams's has not pointed to an objectionable statement.  Williams's trial counsel cannot be found ineffective for failing to lodge a baseless objection.  *See Miller*, 714 F.3d at 904 n.6; *Koch*, 907 F.2d at 527 (counsel is not required to make futile motions or objections); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

---

[51] *Id*. at 29.
[52] *Id*. at 31.
[53] *Id*.

Williams, therefore, has not shown that counsel's performance was deficient or prejudicial as required by *Strickland* where trial counsel actively and skillfully challenged the basis for Dr. Jackson's diagnosis by emphasizing the lack of physical evidence to support it.  In addition, considering the doubly deferential AEDPA standards cited above, Williams has not established that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland* and its progeny.  Williams is not entitled to relief on this claim.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Charles Williams's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[54]

New Orleans, Louisiana, this ___25th___ day of March, 2024.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[54] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.